**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MELVIN QUIJANO,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ELECTRA TRADING SA; HAPAG-LLOYD** | § | Civil Action No. 4:26-cv-01716 |
| **(AMERICA), LLC; HAPAG-LLOYD AG;** | § | |
| **TEXTAINER EQUIPMENT** | § | |
| **MANAGEMENT LTD.; CAI** | § | |
| **INTERNATIONAL INC; and ANGLO-** | § | |
| **EASTERN (GERMANY) GmbH,** | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S EMERGENCY MOTION TO REMAND

Plaintiff Melvin Quijano ("Plaintiff") respectfully requests that this Court remand the underlying action to the 125th Judicial District Court of Harris County, Texas, pursuant to 28 U.S.C. § 1447(c), and, in support, shows as follows:

### I.      BASIS FOR EMERGENCY RELIEF

Plaintiff respectfully requests expedited consideration of this motion. Plaintiff's injuries occurred on May 7, 2024, which means the two-year limitations period will expire roughly six weeks from the date of this filing. Plaintiff has not yet completed his investigation into all parties who may be responsible for his injuries, and a prompt resolution of this motion is necessary to allow Plaintiff sufficient time to join additional parties, if needed, before the limitations window closes.

### II.      INTRODUCTION

Defendant Hapag-Lloyd AG removed this case without obtaining the consent of all properly joined and served defendants, as required by 28 U.S.C. § 1446(b)(2)(A). Defendant

Electra Trading SA ("Electra") was properly served with process on August 16, 2025, in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention" or "Convention"). The designated Central Authority for the Canton of Ticino, Switzerland—the canton where Electra's principal place of business is located—issued a formal certificate confirming that service was completed by personal delivery to Henry Ricci, Electra's director. Despite this, Hapag-Lloyd AG removed this case without Electra's consent. This procedural defect is fatal and cannot be cured.

Hapag-Lloyd AG attempts to excuse this deficiency in two ways. First, it claims that Electra was not properly served. Alternatively, it argues that Electra's consent was not necessary because it was fraudulently joined. Neither argument has merit. The record evidence conclusively proves that Electra was properly served, and the fraudulent-joinder doctrine is inapplicable because that doctrine applies only to non-diverse defendants, and Electra is diverse.

Because Hapag-Lloyd AG's removal is defective, this case must be remanded.

### III.    BACKGROUND

In January 2025, Plaintiff filed this personal-injury action in the 125th Judicial District Court of Harris County, Texas. The original petition named a single defendant—Electra. At Plaintiff's request, the court appointed Crowe Foreign Services to effectuate service on Electra, in accordance with Chapter I, Article 3 of the Hague Service Convention. *See* Dkt. 1–2 at 56.

On August 16, 2025, Electra was served with Plaintiff's original petition at its address in Paradiso, Switzerland, through the Central Authority for the Canton of Ticino—the Tribunale d'appello (i.e., the Ticino Central Authority)—pursuant to Article 5 of the Hague Service Convention. On August 25, 2025, the Ticino Central Authority issued a certificate confirming

service by personal delivery (*destinatario in persona/amministratore unico*) to Henry Ricci, Electra's sole director. *See id.* at 62–65. Plaintiff filed a notice of proof of service on September 17, 2025. *See id.* at 58–65. Although Electra was served, it has never answered or otherwise appeared.

On December 2, 2025, Plaintiff filed his second amended petition (the live pleading), which names six defendants: (1) Electra; (2) Hapag-Lloyd AG; (3) Hapag-Lloyd (America), LLC; (4) Textainer Equipment Management, Ltd.; (5) CAI International Inc.; and (6) Anglo-Eastern (Germany) GmbH.

Hapag-Lloyd AG was served with the second amended petition on January 29, 2026. *See* Dkt. 1 at 2 (¶ 3). On March 2, 2026, Hapag-Lloyd AG filed a notice of removal, asserting diversity jurisdiction under 28 U.S.C. § 1332(a). *See id.* at 3 (¶ 7). In it, Hapag-Lloyd AG acknowledges that Electra did not consent to the removal, *see id.* at 6 (¶ 21), but argues that Electra's consent was unnecessary because Electra was purportedly not properly served, or, in the alternative, because Electra was "fraudulently joined." Both arguments fail.

## IV.    LEGAL STANDARD

The removal statute is strictly construed against removal and in favor of remand. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removing party bears the burden of establishing that federal jurisdiction exists and that the removal was procedurally proper. *See id.* "[A]ny doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

## V.    ARGUMENT

### A.    The Unanimity Rule Required Electra's Consent.

The procedure governing removal is found in 28 U.S.C. § 1446. In cases with multiple defendants, each defendant has thirty days "after receipt by or service on that defendant of the initial pleading or summons" to file the notice of removal. 28 U.S.C. § 1446(b)(2)(B). If defendants are served at different times, and a later-served defendant files a notice of removal, earlier-served defendants may consent to the removal even though they did not do so previously. *See id*. § 1446(b)(2)(C). Importantly, to achieve proper removal in a diversity case, "***all defendants who have been properly joined and served must join in or consent to the removal of the action***." *Id*. § 1446(b)(2)(A) (emphasis added). This requirement is commonly known as the "rule of unanimity."

Relevant here, defendants must join or consent to removal *before the expiration of the 30-day removal period. See Powers v. United States*, 783 F.3d 570, 576 (5th Cir. 2015). If all properly joined and served defendants do not consent within the 30-day timeframe, the removal is procedurally defective, and remand is required.[1] *See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262–63 (5th Cir. 1988); *see also Ortiz v. Young*, 431 F. App'x 306, 307 (5th Cir. 2011).

---

[1] Courts have sometimes allowed defendants to amend removal notices outside the 30-day window to correct certain technical defects in *jurisdictional* allegations. *See Crow v. Melton*, No. 3:17-cv-3103-N-BN, 2018 U.S. Dist. LEXIS 234164, at *29 (N.D. Tex. Feb. 20, 2018) (collecting authority). But the lack of consent is not a jurisdictional allegation and cannot be cured after the 30-day removal window. *See West v. 3M Co.*, Civil Action No. 06-002, 2006 U.S. Dist. LEXIS 37456, at *6 (S.D. Tex. Feb. 6, 2006) ("Although a Defendant's failure to timely join in or consent to removal is not a jurisdictional defect, the statutory time limitation of 30 days is *mandatory* and must be *strictly* complied with; the time period *cannot be extended* by stipulation of the parties or by order of the court.") (emphasis added); *see, e.g., Heard v. McNeely*, No. 24-690-JWD-RLB, 2025 U.S. Dist. LEXIS 27751, at *5 (M.D. La. Jan. 30, 2025) (denying request to amend and remanding to state court).

4

It is undisputed that Electra did not consent to removal. Thus, the salient question is whether Electra's consent was required—that is, whether Electra was "properly joined and served." As shown below, it was.

**B.      Electra Was Properly Served Under the Hague Service Convention.**

Hapag-Lloyd AG's challenge to service rests on the contention that the proof-of-service documents do not affirmatively show that the Texas citation was served on Electra. That contention is inaccurate. The record conclusively demonstrates that service was completed in full compliance with the Hague Service Convention. The proper starting point for evaluating Hapag-Lloyd AG's argument is the Convention's service framework and Switzerland's implementation of it.

**1.   The Hague Service Convention governs service in Switzerland.**

The Hague Service Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Convention, art. 1.[2] The Convention is mandatory whenever it applies. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988).

To implement the Convention, Switzerland has designated regional cantonal authorities that serve as the Central Authorities for its member states. *See* Convention, art. 2. For the Canton of Ticino—the Swiss member state where Electra is located—the designated Central Authority is the Ticino Tribunale d'appello (Ticino Canton Appeals Court). *See Authorities: Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*,

---

[2] An electronic copy of Chapter I, Articles 1 through 31 of the Hague Service Convention is available at: https://www.hcch.net/en/instruments/conventions/full-text/?cid=17.

Overheild.nl              Treaty           Database,            available                at

https://treatydatabase.overheid.nl/en/Treaty/Details/004235_du.html#Switzerland.[3]

According to Article 3 of the Hague Service Convention, service of process must be carried out through the destination country's Central Authority. *See* Convention, art. 3. Article 5 provides that the Central Authority "shall itself serve the document or shall arrange to have it served by an appropriate agency," using either a method prescribed by its international law for domestic service or by a specific method requested by the applicant. *Id.*, art. 5. Upon completion of service, the Central Authority issues a certificate under Article 6, confirming that the documents have been served and stating the method, place, and date of service, as well as the identity of the individual to whom the document was delivered. *See id.*, art. 6.

Switzerland objects to all other methods of service. *See id.*, art. 10. Thus, service can be completed only through the Central Authority channel as outlined in Article 5. This is precisely the channel Plaintiff used here.

### 2.   Service on Electra fully complied with the Convention.

On August 8, 2025, Plaintiff's international process-server, Crowe Foreign Services, submitted a formal Request for Service Abroad to the Ticino Central Authority, under Article 3. *See* Request for Service Abroad Service Packet, attached as **Exhibit A** at 2. The request identified Electra Trading SA at its address in Ticino, Switzerland, and requested service in accordance with

---

[3] The treaty database is maintained by the Netherlands Ministry of the Interior and Kingdom Relations, and the Swiss Federal Office of Justice independently confirms the same designation on its official website, which is published in German, French, and Italian. *See* https://www.rhf.admin.ch/rhf/de/home/zivilrecht/behoerden/zentralbehoerden.html. Plaintiff requests that the court take judicial notice of these governmental databases. *See Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 871 (S.D. Tex. 2020) ("[G]overnmental websites are proper sources for judicial notice.").

Article 5(1)(a). It specifically listed the following documents to be served in "Cause No. 202505979":

- Hague Summary and Warning page;

- Citation; and

- Plaintiff's Original Petition (with Italian translation).

*Id*.; *see also id*. at 5–17. The request was received on August 11, 2025. *See* Central Authority Confirmation of Service, attached as **Exhibit B** at 3 (stamp on right-hand side).

Service was successfully completed on Electra on August 16, 2025, through Ticino's designated Central Authority (Ticino Canton Appeals Court). *See* Dkt. 1–2 at 60–65. The Central Authority issued a formal Article 6 certificate (*Zustellungszeugnis* / certificate of delivery) dated August 25, 2025. This certificate confirmed that:

(i)     The document was served ("que la demande a été exécutée," / "that the request has been executed");

(ii)    Service was effected on August 16, 2025;

(iii)   Service was carried out at 6900 Paradiso, Riva - Paradiso Palazzo Mantegazza;

(iv)    Service was accomplished in accordance with Article 5, first paragraph, subparagraph a (i.e., in accordance with Swiss law for the service of documents in domestic actions); and

(v)     "***The documents referred to in the request*** have been delivered to" Henry Ricci, identified as the recipient in person and sole director (*destinatario in persona/amministratore unico*).

*Id*. at 62 (emphasis added). The certificate bears the official seal of the Ticino Canton Appeals Court, and the completed certificate was transmitted under a cover letter, signed by Salvatore Zedda, secretary for the President of the Appeals Court. *See id*. at 61–62.

An Article 6 certificate issued by a foreign Central Authority is prima facie evidence that service was made in compliance with the Convention.[4] *See, e.g.*, *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1389 (8th Cir. 1995) (holding that the Spanish Central Authority's return of a completed certificate of service was prima facie evidence that that Authority's service on the defendant was compliant); *accord Myrtle v. Graham*, No. 10-1677, 2011 U.S. Dist. LEXIS 14017, at *5 (E.D. La. Feb. 3, 2011). "[T]o rebut the prima facie case established by the completed certificate of service requires a defendant to show lack of actual notice of the proceedings or that the defendant was prejudiced in some way as a result of the alleged deficiency." *Myrtle*, 2011 U.S. Dist. LEXIS 14017, at *6.

Simply put, the Article 6 certificate is prima facie evidence that Electra was properly served. Hapag-Lloyd AG has done nothing to rebut this prima facie evidence, and the Court should not entertain its attempt to go beyond the formal certification.

### 3. Hapag-Lloyd AG's objections are belied by the record.

Hapag-Lloyd AG raises two objections regarding the service on Electra, neither of which withstands scrutiny.

#### i. Contrary to what Hapag-Lloyd AG says, the Texas citation was included in the documents served on Electra.

Hapag-Lloyd AG argues that service was defective because "the notice by counsel only contends that Plaintiff's Original *Petition* was served, but *not* the Texas state court *citation*." Dkt. 1 at 6 (¶ 21) (emphasis added). The record conclusively refutes this contention. Specifically, the "Request for Service Abroad" service packet includes the citation and original petition, along with

---

[4] The certificate represents the official determination of the foreign sovereign that service was carried out in compliance with its own domestic law and the Convention. Under the Convention's framework, it is the Central Authority of the destination country—not the parties or a court—that determines whether and how service is to be effected under Article 5. The Central Authority then certifies the result by issuing a certificate, in accordance with Article 6.

certified Italian translations of each, as documents transmitted for service on Electra. *See* Ex. A at 6–17. In addition, the request form identifies the "Citation" and "Plaintiff's Original Petition" among the documents to be served. *See id.* at 2. The Article 6 certificate, in turn, confirms that *"[t]he documents referred to in the request* [were] delivered to" Henry Ricci. Dkt. 1–2 at 62 (emphasis added). Because the citation was among the documents referred to in the request, the certificate confirms its delivery along with the petition.

Hapag-Lloyd AG's argument mistakes the summary contained in the service notice for operative proof of service. Plaintiff's notice of proof of service is just a filing that describes the result. But it is the Article 6 certificate, attached to the service notice, that serves as the operative document establishing conclusively that both the citation and original petition were served on Electra by the Ticino Central Authority.

Texas Rule of Civil Procedure 108a(b) acknowledges the certificate as a valid proof of service, stating that "[p]roof of service may be made as prescribed by the foreign country's law, by court order, by Rule 107, or by a method provided in any applicable international agreement." Tex. R. Civ. P. 108a(b). The Article 6 certificate is precisely such proof, as it is issued under the Hague Service Convention—the international agreement that governs this case.

Again, the Article 6 certificate is prima facie evidence that service on Electra was made in compliance with the Convention. *See Northrup King*, 51 F.3d at 1389. Hapag-Lloyd AG has offered nothing to rebut the prima facie showing other than taking aim at Plaintiff's notice of proof of service. But that is not evidence of defective service, and it certainly is not sufficient to carry Hapag-Lloyd's hefty burden to show that its removal was procedurally proper. *See Manguno*, 276 F.3d at 723 (removal statute is strictly construed against removal and in favor of remand); *Gasch*,

491 F.3d at 281–82 ("[A]ny doubt about the propriety of removal must be resolved in favor of remand.").

### ii. Plaintiff was not required to serve amended petitions on Electra.

Hapag-Lloyd AG also argues that "no filing shows service of the *subsequent* pleadings on Electra, including Plaintiff's live pleading." Dkt. 1 at 6 (¶ 21) (emphasis added). This argument confuses service of process with service of subsequent pleadings.

The unanimity rule under § 1446(b)(2)(A) requires consent from defendants who have been "properly joined and served," meaning served with *process*, not served with every subsequent filing in the case. "Service of process is the means by which a court obtains personal jurisdiction over a defendant." *Stafford v. Briggs*, 444 U.S. 527, 553 n.5 (1980). Once a defendant has been properly served with process, the court has personal jurisdiction over that defendant, and the defendant is "served" within the meaning of § 1446(b)(2)(A). Nothing in the removal statute conditions the consent requirement on whether a nonconsenting party has received subsequent pleadings. *See* 28 U.S.C. § 1446(b)(2)(A). Indeed, the overall statutory framework treats service of the initial process as the relevant jurisdictional event. *See* 28 U.S.C. § 1446(b)(1) (triggering the 30-day removal clock from "receipt by the defendant . . . of a copy of the *initial pleading* . . . ." (emphasis added)).

In sum, the removal statute does not require that every subsequent amended pleading be separately served on a defendant before that defendant's consent to removal is required.

### C.    The Fraudulent-Joinder Doctrine Does Not Apply to Electra.

Hapag-Lloyd AG's alternative argument—that Electra was "fraudulently joined"—fares no better, as the doctrine does not apply to diverse defendants. "The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *Hart v. Bayer Corp.*, 199 F.3d 239,

246 (5th Cir. 2000). As the following sections show, Hapag-Lloyd AG fails to carry its onerous burden of proving that Electra was fraudulently joined. The doctrine does not rescue Hapag-Lloyd AG from its admitted failure to secure Electra's consent before removing.

### 1. Fraudulent joinder presupposes a non-diverse or in-state defendant.

On its face, the fraudulent-joinder doctrine (now referred to as "improper joinder"[5]) does not apply here. It exists to prevent a plaintiff from defeating diversity jurisdiction by including a non-diverse or in-state defendant against whom the plaintiff has no viable claim. *See Crockett v. R.J. Reynolds Tobacco Co*., 436 F.3d 529, 533 (5th Cir. 2006) ("The fraudulent joinder exception . . . is designed to prevent plaintiffs from blocking removal by joining nondiverse and/or in-state defendants who should not be parties.").

By its terms, the fraudulent-joinder inquiry is directed at the joinder of a non-diverse or in-state party—not a diverse one from another country. *See Smallwood v. Ill. Cent. R. Co*., 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*) (explaining that "the purpose of the improper joinder inquiry is to determine whether or not the ***in-state defendant*** was properly joined" (emphasis added)); *id.* at 574 ("A claim of improper joinder by definition is directed toward the ***joinder of the in-state party***, a simple but easily obscured concept." (emphasis added)); *McDonal v. Abbott Labs*., 408 F.3d 177, 183 (5th Cir. 2005) ("To establish a claim for improper joinder, the party seeking removal must demonstrate either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the ***non-diverse party*** in state court.'" (emphasis added) (quoting *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003)). Where the challenged defendant is diverse, its presence in the lawsuit does not defeat diversity jurisdiction, rendering the

---

[5] The Fifth Circuit has adopted the term "improper joinder," though "there is no substantive difference between the two terms." *Smallwood v. Ill. Cent. R.R. Co*., 385 F.3d 568, 571 n.1 (5th Cir. 2004).

11

fraudulent-joinder doctrine irrelevant. *See Tipton v. Landen*, No. 6:15-cv-02811, 2016 U.S. Dist. LEXIS 29881, at *12-13 (W.D. La. Mar. 8, 2016) ("***When the parties are not diverse***, the doctrine of improper joinder permits removal and precludes remand when there is either actual fraud in the pleading of jurisdictional facts or an inability of the plaintiff to establish a cause of action against a ***nondiverse party***." (emphasis added)).

Accordingly, ***"the improper joinder doctrine is not applicable to a diverse defendant."*** *Id*. at *13; *see Briscoe v. CH Mortg. Co. I*, No. 4:16-CV-2811, 2017 U.S. Dist. LEXIS 52669, at *5 (S.D. Tex. Apr. 5, 2017) (removing party must demonstrate that the "fraudulently joined" defendant is a non-diverse party); *Alford v. Chevron U.S.A. Inc.*, No. 13-5457, 2014 U.S. Dist. LEXIS 786, at *18 (E.D. La. Jan. 6, 2014) (improper joinder not applicable where the party alleged to be joined improperly was not an in-state defendant and therefore "could not affect diversity jurisdiction"). Hapag-Lloyd therefore cannot invoke the doctrine to sidestep its admitted failure to secure Electra's consent to removal. Removal was therefore improper, and this case should be remanded to state court.

### 2.   Neither prong of the fraudulent-joinder test applies.

There are only two ways to establish fraudulent joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse [defendant] in state court." *Travis*, 326 F.3d at 646–47. "[A] court may choose to use either one of the two analyses, but it must use one and only one of them, not neither or both." *Int'l Energy Ventures Mgmt., LLC v. United Energy Group, Ltd.*, 818 F.3d 193, 207 (5th Cir. 2016). Neither method applies to Electra.

Hapag-Lloyd AG does not allege actual fraud in the pleading of jurisdictional facts. Rather, its fraudulent-joinder argument rests entirely on the alleged absence of "colorable claims against

Electra." Dkt. 1 at 8 (¶ 22(d)). But as already explained, the "no colorable claim" test applies only to non-diverse or in-state defendants, which Electra is not. *Smallwood*, 385 F.3d at 573–74. It is undisputed that Electra is a Swiss corporation with its principal place of business in Switzerland, while Plaintiff is a citizen of Texas. *See* Dkt. 1 at 3 (¶ 8). Thus, Electra's presence in this lawsuit cannot defeat diversity jurisdiction. *See, e.g.*, *Alford*, 2014 U.S. Dist. LEXIS 786, at *18 (improper joinder not applicable where the party alleged to be joined improperly was not an in-state defendant and therefore "could not affect diversity jurisdiction").

Hapag-Lloyd AG cites *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) and *Chambers v. HSBC Bank USA*, 796 F.3d 560, 564 (6th Cir. 2015) for the proposition that a fraudulently joined defendant's consent is not required for removal. *See* Dkt. 1 at 7 (¶ 22). But both cases involved non-diverse defendants—the one and only context where the fraudulent-joinder doctrine applies. Neither case suggests, let alone holds, that the doctrine can be applied to a diverse defendant, and Hapag-Lloyd AG cites no authority for such a proposition. Accordingly, Hapag-Lloyd AG was required to comply with the unanimity rule, which it failed to do.

3. **As an independent matter, Hapag-Lloyd AG fails to carry its burden to prove there is "absolutely no possibility" that Plaintiff can establish a cause of action against Electra.**

Not only does the fraudulent-joinder doctrine not apply, but as an independent matter, Hapag-Lloyd AG fails to carry the heavy burden that the doctrine entails. "The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." *Hart*, 199 F.3d at 246. To establish fraudulent joinder, "[t]he removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the [joined] defendant in state court." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995). Courts resolve all legal and factual issues, doubts, and ambiguities in favor of remand. *See Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007) ("In making this legal determination, we are

13

obliged to resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law, in plaintiffs' favor." (cleaned up)). If there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved," then there is no fraudulent joinder. *Badon v. RJR Nabisco Inc.*, 236 F.3d 282, 286 (5th Cir. 2001) (quotation omitted).

In evaluating fraudulent joinder, the court conducts a Rule 12(b)(6)-type analysis, "looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the [joined] defendant." *Smallwood*, 385 F.3d at 573. "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id*.

Here, Plaintiff's second amended petition alleges that Electra, Textainer, and CAI owned the three freight containers at issue, that the owner of the subject container failed to properly secure the cargo, and that this failure caused Plaintiff's injuries. *See* Dkt. 1–2 at 92–101. Taken as true, these allegations state a claim against Electra.

Only in "rare cases"—where the plaintiff has "misstated or omitted discrete facts that would determine the propriety of joinder"—may the court, in its discretion, pierce the pleadings and conduct a summary inquiry. *Smallwood*, 385 F.3d at 573. Even then, the inquiry is narrow. As the Fifth Circuit recently confirmed, such a summary inquiry "is appropriate ***only to identify the presence of discrete and <u>undisputed facts</u> that would preclude [the] plaintiff's recovery*** against the [joined] defendant." *Jack v. Evonik Corp.*, 79 F.4th 547, 555 (5th Cir. 2023) (emphasis added).

Hapag-Lloyd AG has not provided such "discrete and undisputed facts." It asserts that CAI claims in its special appearance that it owns one of the three subject containers (BMOU2728682), that a CAI subsidiary claims to own another (CAIU2931600), and that Textainer claims to own

the other (TEMU1788593). *See* Dkt. 1 at 8 (¶ 22(b)). These are disputed facts, not undisputed ones—and again, the fraudulent-joinder doctrine does not apply in the first place.

## VI.   REQUEST FOR ATTORNEY'S FEES AND COSTS

If a court determines that the removing party lacked an objectively reasonable basis for removal, it may award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); *see Howard v. St. Germain*, 599 F.3d 455, 457 (5th Cir. 2010). In deciding whether to award costs and expenses, courts must evaluate the objective merits of removal at the time of removal. *See Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 299 (5th Cir. 2000). A defendant's subjective good-faith belief that removal was justified is no defense against an otherwise improper removal. *See id.* at 292 ("To be sure, the district court may award fees even if removal is made in subjective good faith.").

Here, Hapag-Lloyd AG has removed the case without the consent of a properly served defendant, disputed the validity of service certified by a Swiss Central Authority without providing anything to counter the prima facie evidence that Electra was properly served, and presented a fraudulent-joinder argument that is objectively inapplicable and unsupportable. On these facts, Plaintiff respectfully requests that the Court award costs and attorney's fees incurred due to this improper removal.

## VII.   CONCLUSION

Hapag-Lloyd AG has failed to carry its burden of establishing that the removal was procedurally proper. The removal statute is interpreted strictly against removal, and the party seeking removal must prove that the process was strictly followed. Any doubt must be resolved in favor of remand. Hapag-Lloyd AG removed this case without the consent of a properly joined and

served defendant, and neither of its arguments for excusing that failure has merit. Therefore, remand is required.

Respectfully submitted,

**SUITS & BOOTS INJURY LAWYERS**

By: _____

**Kip Brar**
Texas State Bar No. 24067333
*Kip.Brar@CallTheSuits.com*
**Natalie Elms**
Texas State Bar No. 24078475
*Natalie.Elms@CallTheSuits.com*
**Robert J. Carty, Jr.**
State Bar No. 00788794
*Rob.Carty@CallTheSuits.com*
**David Hughes**
State Bar No. 24101941
*David.Hughes@CallTheSuits.com*
600 Bering Dr., Suite 2000
Houston, Texas 77057
(713) 955-1157 - Phone
(713) 583-8289 - Fax


**Alvaro "Al" Silverio**
Texas State Bar No. 24108236
*Al@fvlawfirm.com*
Service: *eservice@fvlawfirm.com*
3101 Bee Cave Rd., Ste. 301
Austin, TX 78746
(512) 956-4789 (phone)
(512) 956-9290 (fax)


*COUNSEL FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2026, a true and correct copy of the above document was filed with the Court's electronic-filing system with notice being sent to all counsel of record registered to receive electronic service by operation of the court's electronic filing system.

Kip Brar